UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT PARROTT, JR.,

    Plaintiff,

v.                                                          CASE NO. 3:10-CV-00201-J-34JBT

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

    Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his applications for a Period of Disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").

### I. Issues on Appeal and Summary of Decision

There are three issues on appeal: (1) whether the Administrative Law Judge ("ALJ") properly applied the pain standard; (2) whether the ALJ's determination of Plaintiff's residual functional capacity ("RFC") is supported by substantial evidence; and (3) whether the ALJ erred in finding that Plaintiff could perform semi-skilled jobs.

The undersigned finds that the ALJ did not properly apply the pain standard, as he failed to articulate his reasons for discrediting Plaintiff's subjective complaints. The ALJ's RFC determination is not supported by substantial evidence because he did not consider the examining consultant's opinion. Since the ALJ's RFC determination may change as a result of remand on the first two issues, the Court need not address the last issue. Thus,

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

the undersigned respectfully recommends that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## II.     Procedural History and Summary of the ALJ's Decision

On April 27, 2007, Plaintiff protectively filed applications for a Period of Disability, DIB, and SSI, alleging he became disabled on March 21, 2007, due to gouty arthritis and high blood pressure.[2] (Tr. 126-34, 145-50.) The Social Security Administration ("SSA") denied his applications initially and upon reconsideration. (Tr. 57-70, 73-78.) Plaintiff then requested and received a hearing before the ALJ on March 26, 2009, during which he was represented by an attorney. (Tr. 19-56, 79-80, 92-101, 112-13.) Plaintiff and Richard J. Hickey, a vocational expert ("VE"), appeared and testified at the hearing. (Tr. 19, 26, 45.)

On April 29, 2009, the ALJ issued his decision, finding Plaintiff not disabled and denying his claim. (Tr. 12-18.) The ALJ first determined Plaintiff met the insured status requirements of the Social Security Act through September 30, 2011. (Tr. 14.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 21, 2007. (*Id.*) At step two, the ALJ determined that Plaintiff had "the following severe impairments: bilateral knee gouty arthritis, degenerative disc disease of the lumbosacral spine, essential hypertension, and obesity." (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

---

[2] During the March 26, 2009 hearing, the ALJ stated that Plaintiff's applications were filed on March 29, 2007. (Tr. 21.) It appears, however, that the ALJ was referring to the recommended onset date of Plaintiff's alleged disability, as the other evidence of record points to a different filing date—April 27, 2007. (*See* Tr. 145.)

The ALJ then determined that Plaintiff had the RFC to perform a range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with some additional limitations. (Tr. 15.) The ALJ stated that Plaintiff was able to lift and carry ten pounds occasionally and lighter weights frequently; stand and walk for two hours, and sit for six hours, in an eight-hour workday; and occasionally perform postural movements. (*Id.*) The ALJ determined that Plaintiff could "never climb ropes, ladders or scaffolds," and should "avoid moderate exposure to extreme cold, [and] workplace hazards[,] such as dangerous moving machinery and unprotected heights." (*Id.*)

The ALJ also found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they [were] inconsistent with the . . . [RFC] assessment." (Tr. 16.) The ALJ stated that he had considered opinion evidence, Plaintiff's symptoms, and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. (Tr. 15.) The ALJ gave significant weight to the opinion of Debra Troiano, M.D., a non-examining State agency medical consultant, and the X-ray reports from St. Vincent's Medical Center. (Tr. 16.) He gave considerable weight to the opinion of Nathan M. Hameroff, M.D. (*Id.*) The ALJ referred to Dr. Hameroff as having performed a "consultative examination." (*Id.*) However, this was erroneous. Dr. Hameroff was a treating radiologist. (Tr. 243-46.) Dr. Hung V. Tran performed the consultative examination. (Tr. 227-34.)

At step four, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (Tr. 16-17.) The ALJ stated that transferability of job skills was "not material

to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant [was] 'not disabled,' whether or not the claimant [had] transferable job skills." (Tr. 17.) At step five, based on the testimony of the VE and considering Plaintiff's age,[3] education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 17-18.) In addition, the ALJ found that based on the VE's testimony, Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 18.) Thus, the ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act from March 21, 2007 through April 29, 2009. (Tr. 12, 18.)

Following the ALJ's decision, Plaintiff filed a Request for Review by the Appeals Council, which was denied on November 27, 2009. (Tr. 4.) Accordingly, the ALJ's April 29, 2009 decision is the final decision of the Commissioner. On March 5, 2010, Plaintiff timely filed his Complaint with this Court after being granted an extension of time to file a civil action. (Doc. 1; Tr. 1.)

### III.     Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner has established a five-step sequential

---

[3] Plaintiff was born in 1959. (Tr. 126.)

analysis for evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).[4]

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) ("Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'").

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam). "The district court must view the record as a whole, taking into account evidence favorable as well as

---

[4] The law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986); *see also McCruter v. Bowen*, 791 F.2d 1544, 1545 n.2 (11th Cir. 1986).

unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

**IV.    Summary of Evidence**

   **A.    Plaintiff's Testimony & Medications**

At the March 26, 2009 hearing, Plaintiff testified that he has had gouty arthritis since 1982, one or two episodes per month, lasting from two to five days each. (Tr. 28-29.) He stated he was in pain from the gout "[j]ust about every day" and he had seven to eight good days per month and six to seven bad days. (Tr. 30, 36.) On a bad day, he is bedridden, cannot lift, and cannot even wear shoes. (Tr. 30, 34, 36-37.) On a good day, he can move, walk "[m]aybe a quarter of a mile, no more than a half," lift twenty to thirty pounds, and might wash the dishes. (Tr. 33, 35-36, 40.)

Plaintiff testified he could not climb a flight of stairs, kneel or crawl; he could squat or stoop with difficulty; he had problems using his hands sometimes, as the joints in his fingers swelled two to three times per month and he felt tingling all the time. (Tr. 44-45.) Plaintiff also expressed that from time to time he had back pain in his lower left hip, which felt like numbness. (Tr. 37.) He had sharp and constant knee pain, and his knee would swell up on a bad day and he could not bend it. (Tr. 38.) Plaintiff further testified to getting dizzy and light-headed due to his hypertension once or twice per month. (Tr. 31.)

Plaintiff testified that he had not sought treatment during the year preceding the hearing because of inability to pay and lack of transportation. (Tr. 29, 40.) One episode for which Plaintiff did not seek treatment occurred in the summer of 2007 and allegedly

lasted about thirty days. (Tr. 29.)

Plaintiff testified that his symptoms had prevented him from going to church during the nine months preceding the hearing. (Tr. 43.) He had problems falling asleep and slept for three to four hours per night. (*Id.*) He stopped driving in August of 2008 because of a DUI. (Tr. 34.) He watches television for six to seven hours per day, reads the Bible for three to four hours per day, and does not shop, cook, or clean. (Tr. 40-42.)

The record shows that Plaintiff was taking Allopurinol, Indomethacin, and [Cionicine] for his gouty arthritis. (Tr. 23, 154, 193, 197, 217-18.) Plaintiff indicated that Allopurinol did not help much to prevent the gout attacks, and while Indomethacin helped some for the swelling, it did little for the pain. (Tr. 157, 193, 217.) He testified that his medications only eased the pain and did not eliminate it. (Tr. 30.) Plaintiff was also taking Lisinopril, Metoprolol, Lopressor, Amlodipine, and Nifedipine for his high blood pressure. (Tr. 157-58, 167, 176, 193, 196, 217-18.) He reported that Lisinopril did not help and sometimes made him light-headed. (Tr. 157-58, 167, 193, 196, 217-18.) Plaintiff was also taking Amitriptyline to help him sleep. (Tr. 188.) Most, if not all, of these medications were prescribed by the Agape Community Health Center. (Tr. 176, 188, 193, 217.)

### B.   Treating Source Evidence

The record medical evidence from treating sources consists primarily of emergency room visits and two visits with the Duval County Health Department (Agape Community Health Center). On March 22, 2007, Plaintiff was admitted to the emergency room at Orange Park Medical Center due to syncope and/or seizure. (Tr. 153, 198, 201, 203-04.) A CT scan of the head showed non-specific findings and further evaluation with an MRI of the brain was recommended. (Tr. 209.) It appears the MRI was done but the results are

not in the record. (Tr. 202.) An Echocardiographic Report indicated "[n]ormal left ventricular size and ejection fraction" and "no significant flow abnormalities." (Tr. 211.) Plaintiff was discharged on March 23, 2007 in stable condition. (Tr. 153, 196, 200-01.)

On May 9, 2007, Plaintiff was seen at the Duval County Health Department for complaints of gout, high blood pressure, dizziness, and pain in his knees, elbows, and lower back. (Tr. 218, 224.) On physical examination, the doctor noted tenderness in Plaintiff's knee. (Tr. 225.) Plaintiff was diagnosed with hypertension and gouty arthritis. (*Id.*) On July 2, 2007, Plaintiff again visited the Duval County Health Department for complaints of hypertension, gout, headache, fatigue, and shoulder pain. (Tr. 222.) Plaintiff was diagnosed with hypertension and gout. (Tr. 223.)

On October 15, 2007, Dr. Hameroff, on behalf of Gateway Radiology Consultants, reported the results of Plaintiff's X-rays to Lynne Harper-Nimock, M.D., who apparently referred Plaintiff to Gateway Radiology Consultants. (Tr. 243-45.) Plaintiff's lumbar spine X-rays showed "moderate to moderately advanced disc disease at the L4-5 level," "slight narrowing at the L5-S1 level," and "no acute osseous abnormality." (Tr. 243.) His left and right knee X-rays were interpreted as showing "normal knees." (Tr. 244-45.)

On January 27, 2008, Plaintiff was examined at the emergency department of St. Vincent's Medical Center. (Tr. 285-86.) He complained of moderate pain, lasting for four days and not improving with medication, as well as swelling in his right foot. (Tr. 285, 295, 298, 300.) He was diagnosed with hypertension, gouty arthritis, and diabetes mellitus. (Tr. 288, 290, 292, 301.) He was prescribed Lorcet, in addition to the other medications he had been taking. (Tr. 289, 291, 293, 295.)

On February 18, 2009, Plaintiff was again examined at the emergency department

of St. Vincent's Medical Center. (Tr. 255-83.) He complained of gout and severe pain in his low back, left foot, right hand, and multiple joints. (Tr. 262, 265, 268, 273.) On physical examination, he had tenderness in his back, right hand, left foot, and joints, which were swollen and warm/hot. (Tr. 274.) An X-ray of his chest demonstrated "moderate hypertrophic degenerative changes of the thoracic spine," but otherwise it was negative. (Tr. 276.) An X-ray of his right hand showed no acute abnormalities. (Tr. 277.) An X-ray of his left foot showed no acute disease. (Tr. 278.) He was diagnosed with gouty arthritis, low back pain, left foot pain, right hand pain, diabetes mellitus, and hypertension. (Tr. 256-58, 260, 274.) He was prescribed Indocin and Vicodin for his pain and arthritis, in addition to the other medications he had been taking. (Tr. 261, 265, 272, 274.)

### C. Examining Consultative Evidence

On July 3, 2007, Dr. Tran with the Office of Disability Determination performed a consultative examination on Plaintiff. (Tr. 181, 227.) Plaintiff complained of pain in his joints, high blood pressure, and inability to "walk any further than the parking lot," and to lift anything from the floor. (Tr. 227.) Plaintiff indicated he had been seeing a doctor every month and had been taking medications for blood pressure and gout on a daily basis but did not feel better. (*Id.*) Dr. Tran noted Plaintiff had "[n]o back pain or limitations of movements," "[n]o fainting episodes or blackouts," "[n]o cold intolerance," "no difficulty getting in and out of the examining room table and chair," and was "in no acute distress." (Tr. 228.)

He wrote that Plaintiff could not "bend below 60 degrees due to the pain in [his] legs." (Tr. 229, 233.) Dr. Tran also wrote:

> No atrophy. No pain on arms today. No [loss of motion]. No numbness. No

9

> impairment of gross and fine movements. Grip weak on both hands at only 3/5 on [right] and 2/5 on [left], he blames the gout, even though no pain today. Patient refuses to lift 20 lbs with both hands, says too heavy to do that. . . . No swelling now [of lower extremities]. . . . Pain on both knees and [loss of motion]. . . . Squatting was only 10 inches down with pain in hips, not in knees. . . . Patient is here with a cane. When asked to walk without the cane, he can, slow, limp on knees and not stable.

(Tr. 229.)

Dr. Tran diagnosed Plaintiff with pain in his joints and high blood pressure. (Tr. 230.)

In conclusion, he wrote:

> No explanation of weakness on hands. No pain in hands today. No history of injury or damage. No abnormal physical findings. Probably no efforts to do a good grip on both hands. He manages well his both hands to pick his belongs [sic] and opens the door without trouble. Patient refuses lifting. Questions about cooperation. Squatting causes pain in hips, not in knees (?). Probably no real condition.

(*Id.*)

### D. Non-Examining Consultative Evidence

On July 13, 2007, Huldie Scott, a lay adjudicator/single decision maker, completed a Physical RFC assessment on Plaintiff. (Tr. 235-42.) Ms. Scott diagnosed Plaintiff with pain in his joints and high blood pressure. (Tr. 235.) The following limitations were assessed: lift and/or carry ten pounds occasionally; lift and/or carry less than ten pounds frequently; stand and/or walk for a total of at least two hours in an eight-hour workday; sit for a total of six hours in an eight-hour workday; limited pushing and/or pulling with the lower extremities; climb, balance, stoop, kneel, crouch, and crawl occasionally; and avoid concentrated exposure to extreme cold, vibration, and hazards. (Tr. 236-37, 239.) Ms. Scott concluded that the medical evidence of record did "not support the level of pain reported by claimant." (Tr. 240.)

On December 11, 2007, Dr. Troiano, at the request of the State agency, completed a Physical RFC assessment on Plaintiff. (Tr. 247-54.) She diagnosed him with poorly controlled hypertension/obesity and bilateral knee gouty arthritis. (Tr. 247.) The following limitations were assessed: lift and/or carry ten pounds occasionally; lift and/or carry less than ten pounds frequently; stand and/or walk for a total of at least two hours in an eight-hour workday; sit for a total of six hours in an eight-hour workday; climb ramps/stairs, balance, stoop, kneel, crouch, and crawl occasionally; never climb ladders, ropes, and scaffolds; and avoid even moderate exposure to extreme cold and hazards. (Tr. 248-49, 251.)

Dr. Troiano noted:

Claimant has definite MDI [moderate degree of impairment] with moderate to significant functional limitations. He dies [sic] have lumbar DDD [Degenerative Disk Disease] but no objective hip or knee involvement. His allegations are partially consistent with medical evidence in MER [medical evidence of record]. A cane was not prescribed per MER. His gait without cane was unsteady and severe knee pain. This does not correlate with onjective [sic] findings especially in light of normal neuro, motor strength and negative SLRT [Straight Leg Raising Test] without spasm of back. He appears capable of performing SGA [substantial gainful activity] with limitations outlined in this report.

(Tr. 252.) Dr. Troiano also wrote: "Use of cane not medically necessary. He walked without pain but crouched due to his severe knee pains. His L/S spine had no spasm and negative SLRT. His [hypertension] was not controlled. However, there was no evidence of end organ damage." (Tr. 249.)

**V.    Analysis**

   **A.    Pain Standard**

The first issue is whether the ALJ properly applied the pain standard. The

11

undersigned finds that the ALJ failed to articulate his reasons for discrediting Plaintiff's subjective complaints, and, therefore, did not properly apply the pain standard.

The Eleventh Circuit has established a three-part "pain standard" that applies when a claimant seeks to establish disability through his own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam).

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.* Furthermore, "[i]f the ALJ decides not to credit [claimant's pain] testimony, he must articulate explicit and adequate reasons for doing so." *Id.*; *Dyer*, 395 F.3d at 1210 ("If a claimant testifies as to his subjective complaints of disabling pain and other symptoms . . ., the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms.").

The ALJ must consider all of a claimant's "symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). When Plaintiff's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must make a finding on the credibility of the individual's statements." SSR 96-7P.

> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. . . . The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the

>factors that are described in the regulations for evaluating symptoms.[5] The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Id.*; *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam) ("If the ALJ refused to credit subjective pain testimony where such testimony is critical, he must articulate specific reasons for questioning the claimant's credibility."); *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983) (per curiam) ("[W]here proof of a disability is based upon subjective evidence and a credibility determination is, therefore, a critical factor in the Secretary's decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.").

In the present case, the ALJ discussed the reports of Drs. Troiano and Hameroff, and the X-ray reports from St. Vincent's Medical Center, and gave these reports significant or considerable weight. (Tr. 16.) The ALJ then restated some of Plaintiff's testimony from the March 26, 2009 hearing. (*Id.*) Without providing any explanation for his determination, the ALJ then concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not credible to the extent they [were] inconsistent with the . . . [RFC] assessment." (*Id.*)

The ALJ's conclusory finding does not provide specific reasons for discrediting

---

[5] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures used to relieve the pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Plaintiff's testimony.  Although the ALJ's decision touched upon some of the factors for evaluating pain, such as Plaintiff's daily activities and the location, duration, frequency, and intensity of Plaintiff's pain, it contained no specific reasons for finding Plaintiff's statements not credible.  Moreover, Plaintiff's subjective pain testimony was critical in this case because the VE testified that all work would be precluded if Plaintiff had to be out of work seven days per month, as Plaintiff testified.  (Tr. 18, 54-55.)

Plaintiff testified that he has six or seven bad days per month due to gout episodes that occur once or twice per month, last two to five days each, and keep him bedridden. (Tr. 28-29, 34, 36-37.)  Further, he had hypertension episodes that occur once or twice per month and make him dizzy and light-headed.  (Tr. 31.)  He further testified that he is in pain from gout "[j]ust about every day," and during an episode cannot move, lift, drive, wash dishes, or do anything besides laying in bed.  (Tr. 30, 34, 36-38, 40, 43.)  Plaintiff also testified the joints of his fingers swell two to three times per month and there is tingling in his hands.  (Tr. 45.)

Given Plaintiff's testimony and the VE's conclusions, the Court agrees with Plaintiff that the "ALJ's credibility determination should be reversed, with remand for proper analysis of [Plaintiff's] allegations and an explanation of the ultimate credibility finding."  (Doc. 18 at 10.)

### B.   RFC Determination

Plaintiff argues that "[t]he ALJ erroneously relied on the unsupported opinions of Drs. Tran and Troiano," and, therefore, his RFC finding is not supported by substantial evidence. (Doc. 18 at 13.)  Plaintiff also argues that Dr. Troiano misinterpreted Dr. Tran's report and records, and that her report is inconsistent with Dr. Tran's observations.  (*Id.* at 11.)

However, in the Court's view, the ALJ did not even consider Dr. Tran's opinion and this failure requires reversal.[6]

In assessing Plaintiff's RFC, the ALJ gave significant weight to Dr. Troiano's non-examining opinions but failed to even mention Dr. Tran's consultative examination.[7] (Tr. 16.) To the extent there was any inconsistency between these two doctors' opinions, Dr. Tran's opinion was generally entitled to more weight than Dr. Troiano's opinion. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). The ALJ did not state what weight he assigned to Dr. Tran's opinion and it appears that he did not even consider this opinion. The ALJ was required to explain the weight he gave to Dr. Tran's opinion and why. *See* 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii) ("Unless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical . . . consultants . . ., as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.").

Therefore, on remand, the ALJ must consider Dr. Tran's opinion, explain the weight he gives to that opinion and why, and, if appropriate, reevaluate Plaintiff's RFC assessment.

---

[6] Plaintiff's brief sufficiently raises the issue regarding the ALJ's consideration, if any, of Dr. Tran's opinion in determining Plaintiff's RFC. Therefore, without reaching the question whether Dr. Troiano's report is inconsistent with Dr. Tran's observations, the undersigned will recommend reversal for the ALJ to address the underlying issue of considering and properly weighing Dr. Tran's opinion.

[7] As noted earlier, the ALJ appears to have been confused between Drs. Tran and Hameroff.

### C. Semi-Skilled Work

The final issue is whether the ALJ erred in finding that Plaintiff could perform semi-skilled jobs. Plaintiff argues that he cannot perform any of these jobs due to lack of transferrable skills and that the ALJ failed to make the requisite findings that he had any skills that could be utilized to perform these jobs. (Doc. 18.) The Commissioner responds that the ALJ was not required to make a finding regarding transferability of skills when he did not rely solely on the Medical Vocational Guidelines ("Grids"). (Doc. 20.)

"To meet the criterion of 'skilled or semiskilled -- skills transferable,' a person must have performed work which is above the unskilled level of complexity, must have identifiable skills, and must be able to use these skills in specific skilled or semiskilled occupations within his or her RFC." SSR 83-10. Since the ALJ's RFC determination may change as a result of the remand on the first two issues, the Court need not reach the issue of transferability of skills at this time. *See id.* (stating that "a person's RFC may prevent the transferability of skills"); *see also* SSR 82-41 ("All functional limitations included in the RFC (exertional and nonexertional) must be considered in determining transferability."). In sum, it is unnecessary to address the final issue raised by Plaintiff.[8]

---

[8] Furthermore, the law in the Eleventh Circuit is unclear as to whether the ALJ was required to make specific findings regarding transferability of skills when he was not relying solely on the Grids. *See Ripley v. Astrue*, 2010 WL 1759554, at *8 (M.D. Fla. Apr. 30, 2010) (directing the ALJ, on remand, to "follow SSR 82-41 and state the transferable skills in his decision").

Other circuit courts have split on this issue. *Compare Draegert v. Barnhart*, 311 F.3d 468, 474, 476-77 (2d Cir. 2002); *and Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (finding that "specific findings on transferable skills are necessary even where the ALJ relies on the testimony of a VE"); *with Wilson v. Comm'r of Soc. Sec.*, 2004 FED App. 0255P, 378 F.3d 541, 549 (6th Cir.) (finding that "[t]he regulation does not explicitly mandate the enumeration of transferable skills at step 5" and that "SSR 82-41 does not require the identification of transferable skills" unless the ALJ relies solely on the Grids); *and Tucker v. Barnhart*, 130 Fed. App'x 67, 68 (8th Cir. May 3, 2005) (finding "the ALJ properly relied on VE testimony to find that [plaintiff] had transferable skills . . . and under [SSR] 82-41, the ALJ and VE were not required to identify [plaintiff's] transferable skills").

## VI. Conclusion

For all of the reasons cited in this Order, the ALJ's decision is not supported by substantial evidence. Therefore, this case should be remanded.

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Commissioner's decision be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

2. On remand, the ALJ be required to: (a) explain his reasons for finding Plaintiff's testimony regarding pain not credible; (b) consider Dr. Tran's opinion and explain the weight he gives it, and why; (c) if appropriate, reevaluate Plaintiff's RFC assessment and determine what types of work, if any, Plaintiff can perform; and (d) conduct any further proceedings deemed appropriate.

3. Should the remand result in the award of benefits, that Plaintiff's attorney be **GRANTED**, pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the date of the Commissioner's letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past due benefit calculation stating the amount withheld for attorney's fees, and that the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, not be extended.

4. The Clerk of Court be **DIRECTED** to enter judgment consistent with this Report and Recommendation, and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on December 22, 2010.

*/s/ Joel B. Toomey*
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record